The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceeding of the haring on 17 November 1994 and the briefs and oral arguments on appeal. Although the Full Commission acknowledges the general proposition that the hearing officer is in the best position to judge the credibility of witnesses, Deputy Commissioner Haigh was not present at the hearing. Therefore, the Full Commission is in as good a position as Deputy Commissioner Haigh was to judge the credibility of witnesses. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the prior Opinion and Award and enters the following Opinion and Award.
 *************
The Full Commission finds as facts and concludes as matters of law the following:
 STIPULATIONS
At the hearing on 17 November 1994, the parties stipulated into evidence a package of plaintiff's medical records and other records which were to be submitted subsequent to the hearing, and which were received on 5 August 1997. The parties also stipulated a Form 28B dated 2 June 1994. An Industrial Commission Form 21 Agreement for Compensation, which was approved by the Commission on 18 January 1994, constitutes an Award of the Commission and is incorporated herein by reference.
 *************
Based upon the entire evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On 1 November 1993, plaintiff sustained an admittedly compensable injury by accident. Plaintiff's injury occurred as she began to lift a tray or board of stockings from the bottom rack of a cart which weighed approximately twenty (20) pounds. As the result of this incident, plaintiff experienced the onset of low back pain that radiated into her cervical spine and left shoulder, and later experienced pain radiating from the low back to the left buttock and hip and pain in the left arm and chest area.
2. Through the Industrial Commission Form 21 Agreement for Compensation, which was approved on 18 January 1994, defendants admitted liability for plaintiff's 1 November 1993 injury by accident. Pursuant to this Form 21, plaintiff was to be paid temporary total disability compensation at the rate of $157.07 per week from 2 November 1993 and continuing for necessary weeks.
3. Pursuant to the Industrial Commission Form 28B, which was stipulated to by the parties, plaintiff was paid temporary total disability compensation from 2 November 1993 through 19 May 1994. During this period, plaintiff attempted to return work at reduced wages on two separate occasions, the first on 15 December 1993 and the second on 22 February 1994. For the brief periods plaintiff worked at reduced wages, defendants submitted multiple Industrial Commission Form 26s, but these were not approved by the Commission.
4. On 2 November 1993, plaintiff was referred to Dr. Walter Holloway, a chiropractor. Following examinations of plaintiff, Dr. Holloway diagnosed her with an unstable joint/weight bearing imbalance, thoracic subluxation and cervical subluxation. Plaintiff then began a course of treatments which included spinal manipulation, physical therapy and ultrasound treatments. These treatments by Dr. Holloway continued through January 1994.
5. Plaintiff was also examined in November and December 1993 by Dr. David Gower, a neurosurgeon, on referral from Dr. Holloway. An MRI requested by Dr. Gower in December 1993 revealed degenerative disc disease and a minimal bulge at L5-S1. As of 1 December 1993, Dr. Gower found that plaintiff was unable to return to work through 15 December 1993.
6. On 15 December 1993, Dr. Gower released plaintiff to return to work, even though she was still experiencing low back pain. Plaintiff returned to work on 15 December 1993 and worked through 16 December 1993, but was unable to continue working after that date because she was experiencing increased pain in her back, shoulders and neck. On 17 December 1993, plaintiff returned to Dr. Holloway, who again removed her from work.
7. Defendants then referred plaintiff to Dr. Andrea Stutesman, who first examined plaintiff on 26 January 1994. This examination revealed that plaintiff had diffuse tenderness throughout the neck, the scapular region and upper back and over the left side of the iliac spine. Dr. Stutesman increased her dosage of medications, including those for pain and depression, and prescribed physical therapy for three weeks.
8. When plaintiff was next seen by Dr. Stutesman on 18 February 1994, she was diagnosed as having fibromyalgia with diffuse pain in at least eleven out of eighteen points of tenderness on examination. Plaintiff's fibromyalgia developed over time because of her inactivity and deconditioning which where due to the injury by accident of 1 November 1993. Plaintiff was continued on physical therapy and was to gradually start to return to work at light duty at four (4) hours per day, three (3) days per week for two (2) weeks in her regular job in the layout department. That job involved, among other things, bending and lifting up to twenty (20) pounds and carrying panties, pant tops, and hoses to sewers.
9. Plaintiff then returned to work on or about 19 February 1994 and worked through 23 February 1994, but was unable to continue working thereafter because of increased pain she was experiencing. Plaintiff returned to Dr. Stutesman on 1 March 1994. At that time, Dr. Stutesman removed plaintiff from work until she underwent a work hardening program.
10. Plaintiff was next examined by Dr. Stutesman on 25 April 1994. After review of a functional capacity evaluation which Dr. Stutesman had requested to be performed, plaintiff was released to return to work on 18 May 1994 with restrictions of sitting two to four (2-4) hours a day with ninety (90) minutes maximum sitting before standing two to four (2-4) hours a day with thirty (30) minutes maximum standing before needing a short break and occasionally lifting of ten (10) pounds and frequent lifting of five (5) pounds.
11. With these restrictions, plaintiff returned to work in a gusset sewer position on 20 May 1994. Plaintiff worked four (4) hours that day, a Friday, and four (4) hours the following Monday. Thereafter, plaintiff was unable to continue working because of the increased pain she was experiencing in her head and back and her inability to move her left arm.
12. Plaintiff then returned to Dr. Stutesman on 24 May 1994, and reported that she was unable to continue working because of her continued pain and left arm problems. Following additional testing, Dr. Stutesman released plaintiff to return to work eight (8) hours daily at the gusset sewing job with five (5) minute breaks every hour and discharged plaintiff from her care with a five percent (5%) permanent partial impairment rating of the back.
13. Plaintiff returned to work at the gusset sewing job on 25 May 1994 and worked most of the eight (8) hour shift that day and worked four (4) hours each of the following two days. Thereafter, plaintiff was unable to continue working because of the increased pain she was experiencing in her head, back, neck and shoulders and the limited use of her left arm.
14. Plaintiff was then referred by Dr. Holloway to Dr. Richard Adams, an orthopaedic surgeon. Dr. Adams first examined plaintiff on 20 June 1994, at which time he noted her frustration with the multiple tentative diagnoses she had received from the various physicians who had examined her previously. Dr. Adams opined that plaintiff's fibromyalgia was related to her injury by accident on 1 November 1993 and found no other possible causes for this condition. Plaintiff was also experiencing depression at that time, and was taking prescription medications for this condition.
15. Following his examination of plaintiff, Dr. Adams opined that because of her continued pain, plaintiff was unable to return to work for defendant-employer as of 20 June 1994. Dr. Adams recommended that plaintiff remain out of work and begin rehabilitation to alleviate her continuing symptoms of pain.
16. The Full Commission gives greater weight to the opinions of Dr. Adams regarding plaintiff's ability to return to work than the opinions of Dr. Stutesman. This finding is based in part on the inconsistent diagnoses, treatment, and return to work recommendations plaintiff had received prior to being examined by Dr. Adams. Furthermore, the treatment provided by Dr. Adams upon the referral of Dr. Holloway was reasonably necessary to provide relief to plaintiff from her continued symptoms resulting from her 1 November 1993 injury by accident.
17. In the prior Opinion and Award, Deputy Commissioner Haigh found that plaintiff's continued complaints of pain while she was working were not credible. However, as previously noted, Deputy Commissioner Haigh was not present at the hearing on 17 November 1994. Therefore, the Full Commission is in as good a position as Deputy Commissioner Haigh was to judge the credibility of witnesses and plaintiff's complaints of pain.
18. Based on the entire record, particularly the opinions of Dr. Adams and the consistent nature of plaintiff's reports of pain, the Full Commission finds that plaintiff's assertions that she continued to experience pain after returning to work were credible.
19. During the period from 28 May 1994 through 20 June 1994, plaintiff was not medically excused from work. However, based upon the entire record of evidence, plaintiff's refusal to continue working was reasonable, and she was medially excused from returning to work as of 20 June 1994.
20. Plaintiff's continued pain and fibromyalgia condition were caused by her injury by accident on 1 November 1993.
21. As the result of her 1 November 1993 injury by accident and related conditions, plaintiff has been unable to earn wages in her former position with defendant-employer or in any other position for the period of 20 June 1994 through the present and continuing.
 *************
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 1 November 1993, plaintiff sustained an injury by accident arising out of and in the course of her employment. G.S. § 97-2(6).
2. The Industrial Commission Form 21 Agreement for Compensation, which was approved on 18 January 1994, created a presumption of continued disability in plaintiff's favor. G.S. § 97-2(9); G.S. § 97-29; Kisiah v. W.R. Kisiah Plumbing,124 N.C. App. 72, 476 S.E.2d 434 (1996), disc. rev. denied, 345 N.C. 343,483 S.E.2d 169 (1997). Plaintiff has not unjustifiably refused suitable employment and defendants have failed to otherwise rebut the presumption of continued disability. Id.; G.S. § 97-32.
3. As the result of her 1 November 1993 injury by accident, plaintiff is entitled to be paid by defendants temporary total disability compensation at the rate of $157.07 per week for the period of 20 June 1994 through the present and continuing until such time as she returns to work or until further order of the Commission. G.S. § 97-29.
4. As the result of her 1 November 1993 injury by accident, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred, including expenses related to treatment provided by Dr. Adams. G.S. § 97-25.
 *************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at the rate of $157.07 per week for the period of 20 June 1994 through the present and continuing until such time as she returns to work or until further order of the Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. Defendants shall pay for all related medical expenses incurred or to be incurred, by plaintiff as the result of her 1 November 1993 injury by accident, including expenses related to treatment provided by Dr. Adams.
3. A reasonable attorney fee in the amount of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the amounts of compensation which have accrued, this fee shall be deducted from the amounts owed to plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
4. Defendants shall pay the costs.
 S/ ________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER